# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 34015

DEON and ETHEL ANDERSON, husband
and wife, dba D&E UPHOLSTERY,

      Plaintiffs-Appellants,

v.

REX HAYES FAMILY TRUST, REX
HAYES, Trustee, and REX AND DEVONNE
HAYES LIMITED PARTNERSHIP,

      Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, April 2008 Term

2008 Opinion No. 62

Filed: May 7, 2008

Stephen W. Kenyon, Clerk

---

Appeal from the Sixth Judicial District of the State of Idaho, Caribou County. Hon. Don L. Harding, District Judge.

The decision of the district court is affirmed.

Nick L. Nielson, Pocatello, for appellants.

S. Criss James, Soda Springs, for respondents.

---

W. JONES, Justice

## I. STATEMENT OF THE FACTS

This case involves a boundary dispute between Rex Hayes (Hayes), the trustee for the Rex Hayes Family Trust, and the married couple Deon and Ethel Anderson (the Andersons). Hayes and the Andersons are record owners of adjacent parcels of property in Soda Springs, with Hayes' property bordering the Andersons' property on the north and west. The Andersons, who also own D&E Upholstery, purchased their property from Donald and Karen Tate on September 19, 1994. The property in dispute includes a chain link fence erected in 1989 by Donald and Karen Tate. The

1

Andersons assert that the fence serves as the correct boundary line between their property and Hayes' and they therefore appeal the district court's decision not to quiet title in their favor.

On September 9, 1999, the Andersons signed a putative lease that Hayes apparently had prepared. The relevant paragraphs read as follows:

> Rex Hayes Family Trust agrees to lease property that D&E Upholstery fence is on to D&E Upholstery for $10.00 per year.
> D&E Upholstery can keep fence on property until Rex Hayes Family Trust needs the fence moved. D&E Upholstery will be given 60 days notice if the fence needs to be moved.

Deon Anderson admitted to signing the lease agreement, but claimed not to be aware that it was to be notarized. The Andersons never paid any money on the purported lease agreement. Moreover, as the Andersons stress, Deon Anderson testified that Hayes never approached them to insist that the fence was on Hayes' property, or to demand that Anderson remove the fence. On May 14, 2004, Hayes attempted to terminate this purported lease, demanding that the Andersons remove all property from the area. On August 22, 2005, Hayes indicated that he would be moving the fence within thirty days of that date.

The Andersons hired Alex Hudson in 2001 to determine the true boundary line. Through his survey work, Hudson concluded that the fence was not located on the actual boundary line. After further survey work in 2006, Hudson determined the actual boundary line. Hudson found that the fence completely enclosed Hayes' property to the west of the Andersons' land, and that the west side of the fence was located on state property. The correct boundary, according to Hudson's work, would place the western fence line thirty-one feet further east. The map below illustrates the location of the parties' land, as well as the location of the fence and the state property.



On July 29, 2005, the Andersons filed a Complaint for Quiet Title, requesting, among other things, that the court quiet title to the property in their favor and to declare the nonexistence of the above-mentioned lease agreement. The district court refused to quiet title in the Andersons' favor, in part on the basis that the above-mentioned lease agreement indicated that Hayes owned part of the property in dispute, and in part because the district court found that the State of Idaho owned part of the disputed property, which meant that title could not be quieted in the Andersons' favor, since the State was not a party to the proceedings.

## II.  STANDARD OF REVIEW

A trial court's findings of fact will be set aside only if clearly erroneous, which means that they were not supported by substantial, competent evidence. *Neider v. Shaw*, 138 Idaho 503, 506, 65 P.3d 525, 528 (2003).

This Court exercises free review over questions of law. *Id.*

## III.  ANALYSIS

**Issue 1**:  Whether the trial court erred when it found that no agreement established the fence as the appropriate boundary between the Hayes' and Andersons' property.

Legal Framework

The holder of title to property is the presumed legal owner of that property. *Hettinga v. Sybrandy*, 126 Idaho 467, 469, 886 P.2d 772, 774 (1994); therefore, if someone else claims ownership of such property, he must establish his claim by clear, satisfactory, and convincing evidence. *Russ Ballard & Family Achievement Inst. v. Lava Hot Springs Resort, Inc.*, 97 Idaho 572, 579, 548 P.2d 72, 79 (1976). One who purchases property is put on notice of title disputes that a reasonable investigation would reveal. *Duff v. Seubert*, 110 Idaho 865, 870, 719 P.2d 1125, 1130 (1985).

Boundary by agreement consists of two elements: the boundary is disputed or uncertain, and there was a subsequent agreement fixing the boundary. *Cox v. Clanton*, 137 Idaho 492, 494-95, 50 P.3d 987, 989-90 (2002). Neither party contests the district court's finding that the first element is satisfied. The "agreement" element of "boundary by agreement" can be implied by the surrounding circumstances and the landowners' conduct. *Id.* at 495, 50 P.3d at 990. The "long existence and recognition of a fence as a boundary, in the absence of any evidence as to the manner or circumstances of its original location, strongly suggests that the fence was located as a boundary by agreement." *Id.* (internal quotations omitted). But, acquiescence is "merely regarded as competent evidence of the agreement," and an agreement therefore "is essential to a claim of boundary by acquiescence." *Id.* (internal quotations omitted).

If a boundary by agreement is established, "the parties to the agreement are no longer entitled to the amount of property provided for in their deeds and must absorb the effect of any increase or decrease in the amount of their property as a result of the new boundary." *Stafford v. Weaver*, 136 Idaho 223, 225, 31 P.3d 245, 247 (2001). The new boundary then is binding on successors in interest who purchase with notice of the agreement. *Duff v. Seubert*, 110 Idaho at 870, 719 P.2d at 1130 (1985).

Application

In this case, the district court found that the first element of "boundary by agreement" was satisfied, but that the second element — the element requiring an agreement — was not. The Andersons claim that "the trial court **blatantly failed** to address the issue of whether an implied agreement existed between Hayes and Andersons' predecessors in interest, the Tates." (emphasis in original). The Andersons are incorrect. In the district court's Findings of Fact and Conclusions of Law, it stated that the "presumptions of agreement, which the doctrine of acquiescence may raise in

4

this case, do not trump a written agreement to the contrary." The district court found of greater significance the purported agreement between the Andersons and Hayes. It considered the effect of Hayes' purported acquiescence with regard to the fence and it did not find it persuasive in light of the contrary evidence. The district court did not issue a "clearly erroneous" finding when it found that the lease agreement "trumped" the effects of Hayes' acquiescence.

**Issue 2**: Whether the trial court erred when it failed to quiet title in favor of the Andersons.

The Andersons argue that "if the trial court had properly recognized the boundary agreements that existed, it could have quieted title to the 25 foot strip without ever needing to address the west fence," and the trial court "could have simply ruled that Hayes acquiesced all rights and title to the 25-foot strip and quieted title to the strip in favor of the Andersons."

Hayes responds by asserting that the Andersons did not advance this argument previously, did not cite authority suggesting that this recommended course of action would be correct, and did not supply any substantial competent evidence supporting their recommendation.

The Andersons counter by arguing that the trial court focused on the wrong side of the fence when it focused on the west side rather than the north and south sides. The Andersons state that the "trial court should have focused on the north and south sides of the fence to determine whether Hayes acquiesced to the boundary lines along these sides and thus implied a boundary by agreement."

So, the Andersons' argument relies on their proof of acquiescence by Hayes, an issue already addressed above. Since the Andersons' argument relies on a failed premise, the argument must fail.

**Issue 3**: Whether the lease Anderson signed served as evidence of who owned the disputed property.

The Andersons complain that the district court considered the September 9, 1999 written lease as evidence of who owned the property. The district court held that

> The document, at very least, is an acknowledgement as to the true ownership of the land. The lease document favors the Hayes' ownership of the land, (sic) thus it cannot be construed to meet the Anderson's (sic) second prong of boundary by agreement. The Andersons claim ownership of the land, but the signed document is strong evidence of Anderson's awareness that the property belonged to the Hayes. In addition, the lease document is relevant to show that the Andersons were on notice that there was a dispute as to the fence line.

5

The Andersons contend that the court's finding that the agreement is "strong evidence of Anderson's awareness that the property belonged to the Hayes" was contrary to Mr. Anderson's testimony that he did not sign the agreement to acknowledge that Hayes owned the property. This gripe, of course, is merely that the district court did not reach the same conclusion reached by the Andersons. The signed agreement served as evidence that the property was Hayes' property, and Anderson's testimony served as evidence that the agreement was not as it may have seemed. The district court obviously chose to trust the written agreement over Anderson's contrary self-serving statements. This decision was supported by substantial competent, albeit conflicting evidence, on which a reasonable trier of fact could have relied; therefore, it was not clearly erroneous and will not be overturned. This Court will overturn a lower court's finding of fact only if clearly erroneous, and the existence of merely conflicting evidence does not meet this standard. It is not this Court's role to reweigh facts already found by the designated fact finder.

The Andersons also take issue with the district court's logic when it held that "the validity of the lease is irrelevant to the matter at hand." This logic is flawed, the Andersons exclaimed, because the district court "should not be allowed to rule that the lease was a valid acknowledgment of ownership and that all other matters regarding the document are irrelevant! Such selectivity severely prejudices the Andersons." It is true that the evidence of a lease clearly contradicts the Andersons' position, but contrary to the Andersons' assertion, it is not inconsistent to hold that the document may be used as evidence of a valid acknowledgement of the property's ownership, while conceding that the lease may not have been enforceable[1].

**Issue 4**: Whether either party is entitled to attorney's fees.

Both parties request attorney's fees on appeal. It is Hayes who prevails on this appeal, which forecloses the possibility of the Andersons receiving attorney's fees. Hayes requests attorney's fees under Idaho Code § 12-120(3), arguing that the "Andersons have presented no substantial and competent evidence to demonstrate the trial courts (sic) findings were erroneous and must be reversed." Idaho Code § 12-120(3) states that

> In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise

---

[1] For example, a contract on someone's life is clearly unenforceable for illegality. Yet, this unenforceable contract nevertheless could be used at trial as evidence of the terms of the contract, i.e., as evidence that the parties to the unenforceable contract intended to place a hit on a third party. Similarly, the unenforceable contract in this case may be used as evidence of the terms of the contract, i.e., that the parties agreed that the property belonged to the Hayes.

provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

The term "commercial transaction" is defined to mean all transactions except transactions for personal or household purposes. The term "party" is defined to mean any person, partnership, corporation, association, private organization, the state of Idaho or political subdivision thereof.

This statute does not apply to the facts of this case. This Court has upheld a lower court's ruling that commercial transactions generally do not include real estate transactions or issues involving the ownership of property, such as an action to quiet title. *Treasure Valley Concrete, Inc. v. State*, 132 Idaho 673, 677, 978 P.2d 233, 237 (1999). Therefore, the statute under which Hayes requests attorney's fees is inapplicable. Neither party may receive attorney's fees.

## IV.  CONCLUSION

For the foregoing reasons, the decision of the district court is affirmed. Costs to respondents.


Chief Justice EISMANN, Justices BRUDICK, J. JONES and HORTON, **CONCUR.**